UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FULBROOK CAPITAL MANAGEMENT LLC and SELVYN SEIDEL,

Petitioners,

-v-

JAMES BATSON,

Respondent.

14-CV-7564 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Petitioners, Fulbrook Capital Management LLC ("Fulbrook") and Selvyn Seidel ("Seidel"), bring this application to vacate an arbitration award in favor of Respondent, James Batson ("Batson"). Petitioners claim that the award is marred by errors of both procedure and substance. Batson seeks confirmation of the award. For the reasons that follow, Petitioners' application is denied and the arbitration award is confirmed.

## I. Background

### A. Factual Background[1]

#### 1. The Employment Agreement

Seidel is the founding Chairman and CEO of Fulbrook, a company in the litigation finance industry. (Dkt. No. 1, Ex. B, Affidavit of Selvyn Seidel in Support of Motion to Vacate ("Seidel Aff.") ¶¶ 3-4.)

In May 2012, Seidel hired Batson as Chief Operating Officer of Fulbrook. (Seidel Aff. ¶ 5.) The terms of the employment, set out in a written agreement between Batson and Seidel (the

[1] The following facts are drawn from the parties' submissions. The facts are undisputed unless otherwise noted.

"Agreement"), included the following: the minimum term of employment was to be one year; the minimum salary for that year was to be $300,000; and the salary would be paid to Batson in monthly installments. (Dkt. No. 1, Ex. C, at 6.) In addition, the Agreement provided that Seidel personally guaranteed payment of Batson's salary, and that the payment obligation would remain in effect unless Batson's employment was terminated "for Cause" or "voluntarily by [Seidel]." (*Id.*) The Agreement defined "Cause" as "engaging in gross negligence or willful misconduct" or "violating any law or regulation." (*Id.* at 6 n.1) The Agreement also contained an arbitration clause. (*Id.* at 7.)[2]

Things did not go as planned. Several months into Batson's employment, Fulbrook began to fall behind on its monthly salary payments to him. (Dkt. No. 6, Respondent's Memorandum of Law in Opposition to Motion to Vacate ("Opp. Memo"), at 3.) Batson persuaded Seidel to execute a written amendment to the Agreement (the "Amendment") on November 16, 2012. (Dkt. No. 1, Ex. C, at 8.) Under the Amendment, Petitioners were permitted to defer payment of Batson's salary for the month of October (the "October Payment"), otherwise due on November 5, to December 5. (*Id.*) The Amendment also stated that the payment for "November 2012 and each subsequent month shall become due and payable on the fifth day of the immediately following month," but that Seidel was entitled to defer such payment for up to 30 calendar days. (*Id.*) If Petitioners failed to adhere to these terms, Batson's full salary for his first year would "accelerate and become immediately and unconditionally due and payable." (*Id.*)

---

[2] That clause provides that "[a]ny controversy or claim arising out of or relating to this letter agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under the Expedited Procedures of its Commercial Arbitration Rules as in effect as of the date of this letter agreement and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."

Seidel does not dispute the above. He argues, however, that he agreed to the Amendment because Batson "maintained [that] he and his family were, literally, a step away from financial ruin, and needed that money." (Dkt. No. 13, Reply Declaration of Petitioners in Support of Motion to Vacate ("Reply Decl."), ¶ 10.) Seidel states that he learned later—apparently in the course of Batson's cross-examination during the arbitration—that this "was all pure fabrication." (*Id.* ¶ 20.)

Batson and Seidel's relationship collapsed not long thereafter. Petitioners failed to make Batson's October Payment by December 5, allegedly on the grounds of Batson's continuing poor job performance and the company's precarious financial condition. (*Id.* ¶ 13.) Instead, Seidel sent Batson a notice of termination on December 14. (*Id.*) Seidel eventually made the October Payment to Batson on December 21. (*Id.* ¶ 15.)

Notwithstanding the notice of termination, Seidel says that Batson "would not go." (*Id.* ¶ 17.) Seidel made partial salary payments to Batson in January and February of 2013, again purportedly because Batson claimed to be in dire financial straits. (*Id.* ¶ 16.) Batson finally left his position at Fulbrook on February 25, 2013, demanding the full balance of his salary. Petitioners refused. (Opp. Memo at 3.)

**2. The Arbitration**

Soon thereafter, Batson commenced arbitration proceedings against Petitioners before the American Arbitration Association ("AAA"). Batson filed a demand for arbitration on April 16, 2013 (Dkt. No. 5, Declaration of James Batson in Opposition of Motion to Vacate ("Batson Decl."), Ex. E); Petitioners responded with an answer on May 21 (*Id.* Ex. G). Though Petitioners' pleading was entitled "Answer, Defenses and Counterclaims," Petitioners wrote: "[W]e are not asserting the counterclaims we could." (*Id.* ¶ 51.)

Petitioners had a change of heart—multiple times. On June 12, 2013, following an e-mail exchange with Batson and the AAA,[3] Petitioners filed an amended pleading asserting counterclaims against Batson and seeking damages in excess of $1 million. (*Id.* Ex. I.) Eleven days later, however, Seidel notified the AAA that he intended to withdraw the counterclaims. (*Id.* Ex. K.) He filed an updated pleading to that effect within several weeks. (*Id.* Ex. L.)

The AAA appointed Joan Secofsky as arbitrator on August 12, 2013. (*Id.* ¶ 18.) During a pre-hearing conference call with the arbitrator and Batson on September 10, 2013, Petitioners expressed a revived intent to assert counterclaims against Batson. (*Id.* ¶ 21.) The arbitrator consented, provided that Petitioners did so by October 7, 2013. (*Id.* Ex. M.) Petitioners did not do so. (*Id.* ¶ 23.) On a conference call on January 7, 2014, Seidel confirmed that he had decided not to file any counterclaims after all. (*Id.* ¶ 24.)

On January 18, five days before the scheduled arbitration hearing, Petitioners requested an adjournment for "business related needs." (*Id.* ¶ 25.) Over Batson's objections, the arbitrator granted the request and adjourned the hearing to March 27 and 28, 2014. (*Id.*)

Then, on a pre-hearing conference call on February 12, Seidel said that he changed his mind again and wished to assert counterclaims against Batson. (*Id.* ¶ 26.) This time, the arbitrator denied the request. In an e-mail memorializing her oral ruling, the arbitrator wrote that she was "unwilling to further extend the date by which [Petitioners] shall file any counterclaim beyond October 7, 2013." (*Id.* Ex. N.)

---

[3] In their May 21 answer, Petitioners stated that they wished to refrain from asserting counterclaims, but only if they could do so "on a without prejudice basis." (Batson Decl. Ex. G ¶ 51.) In a May 28 e-mail to the AAA, on which Seidel was copied, Batson sought clarification as to whether Seidel was, in fact, asserting counterclaims, and objected to Petitioners' withholding of their counterclaims without prejudice. (*Id.* Ex. H.) Seidel replied by e-mail the same day, stating: "I will assert the counterclaims fully." (*Id.* Ex. J.)

The arbitration hearings, which proceeded on March 27 and 28, were thorough. The transcripts filled 480 pages, 106 exhibits were introduced into evidence, and the parties submitted lengthy post-hearing briefs at the conclusion of the testimony. (*Id.* ¶¶ 27–28.)

The arbitrator issued a three-page award on May 27, 2014 (the "Award"). (Batson Decl. Ex. O ("Award").) She ruled that Batson was entitled to payment under the Agreement and Amendment. (*Id.* at 2.) Among other things, the arbitrator found that Petitioners were not fraudulently induced to enter the Agreement or the Amendment, that Batson was not terminated "for cause" prior to December 5, 2012, and that Batson did not have a duty to mitigate. (*Id.* at 2–3.) The arbitrator found Petitioners liable for $176,629.17, including interest, fees and expenses. (*Id.* at 3.)

### B. Procedural History

Petitioners filed a timely petition to vacate the Award in New York state court under Article 75 of the New York Civil Practice Law and Rules ("CPLR") on August 25, 2014.[4] (Dkt. No. 1, Ex. A.) Batson filed a notice of removal on September 18, 2014 (Dkt. No. 1),[5] and both an answer and an opposition to the application to vacate on September 24 (Dkt. Nos. 4 & 6). Petitioners submitted a reply declaration in support of the application on October 20, 2014. (Dkt. No. 13.)

## II. Discussion

---

[4] The Agreement provided that it would "be governed by and construed in accordance with the laws of the State of New York." (Agreement at 2.)

[5] The Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a): Fulbrook's members reside in New York and Massachusetts, while Batson resides in Connecticut. (Dkt. No. 14, Declaration of Ethan A. Brecher ¶ 4.)

In New York, the scope of review of arbitration awards is narrow. CPLR § 7511(b)(1) lists four exclusive bases for vacatur of an award: (i) "corruption, fraud or misconduct in procuring the award"; (ii) "partiality of an arbitrator appointed as a neutral"; (iii) "an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made"; or (iv) "failure to follow the procedure of [CPLR Article 75]." *See Advanced Aerofoil Techs., AG v. Todaro*, 13-CV-7181 (RWS), 2014 WL 1512118, at *3 (S.D.N.Y. Apr. 16, 2014), *aff'd*, 14-1663-CV, 2014 WL 7232342 (2d Cir. Dec. 19, 2014) ("[T]he list of potential objections in CPLR § 7511(b) . . . is exclusive.").

A party may establish that an arbitrator "exceeded his power" by making one of three showings: (1) that the arbitrator "exceeded a specifically enumerated limitation on his authority"; (2) that the arbitrator's decision is "totally irrational"; or (3) that the award violates a "strong public policy." *Yonir Techs., Inc. v. Duration Sys. (1992) Ltd.*, 244 F. Supp. 2d 195, 204 (S.D.N.Y. 2002). A court is not empowered to vacate an award merely because the arbitrator made "a mistake of fact or law" or "disregard[ed] the plain words of the parties' agreement." *Hackett v. Milbank, Tweed, Hadley & McCloy*, 86 N.Y.2d 146, 155 (1995).

Petitioners attack the Award on multiple fronts. Their arguments, as set out in their various filings, are as follows: (1) Batson committed fraud in the inducement with regard to the Agreement and Amendment; (2) the arbitrator erred in denying Petitioners' request to assert their counterclaims; (3) the Award was "irrational" because it overlooked, and sometimes misstated, points of fact and law; and (4) the Award was not "reasoned" because it failed to state more than a simple result. These objections, which are in large part an attempt to relitigate the findings of a fair and thorough arbitration process, are without merit.

Petitioners contend, first, that the Award requires vacatur because Batson defrauded Petitioners by both misrepresenting his qualifications when he was hired and lying about the state of his finances when persuading Petitioners to execute the Amendment. The arbitrator addressed this argument. She expressly held, after considering the arguments and evidence offered by the parties, that "[Petitioners] were not fraudulently induced by Batson to enter the Employment Agreement."[6] (Award at 2.) Further, Petitioners misunderstand the CPLR in stating that "[f]raud in the inducement of the contract, or its performance" is a basis for vacatur. (Reply Decl. ¶ 5.) The CPLR refers to fraud *in the procurement of an arbitration award*—that is, fraud that compromises the integrity of the arbitration process—not fraud as a defense to the enforcement of a contract. *See, e.g.*, *Accessible Dev. Corp. v. Ocean House Ctr., Inc.*, 772 N.Y.S.2d 263, 264 (1st Dep't 2004) (failure to disclose "information [that] might have drastically altered the outcome of the arbitration" warranted finding that award "was procured by corruption and fraud"). Petitioners offer no reason to believe that the Award was tainted by such fraud.

Petitioners' second complaint lies with the arbitrator's denial of Petitioners' request to assert their counterclaims. They describe the arbitrator's "unreasonable failure to permit an amendment to the pleadings" as "fundamentally unfair," "misconduct," and a "procedural defect" warranting vacatur. (Reply Decl. ¶¶ 38, 46–47.)

This argument is unconvincing. Petitioners had no shortage of opportunities to assert their counterclaims. The arbitrator's refusal to permit assertion of the counterclaims in February 2014, four months after her October 7 deadline, was reasonable. The decision was consistent

[6] The arbitrator defined the "Employment Agreement" as the "Employment Agreement dated May 16, 2012, as amended on November 16, 2012 with Selvyn Seidel, individually, and on behalf of Fulbrook Management, LLC, as Chairman." (Award at 2.)

with both the AAA's Commercial Arbitration Rules and Mediation Procedures (the "AAA Rules")[7] and interests of fairness and timely adjudication. The evidence indicates, moreover, that the arbitrator treated Petitioners fairly throughout the arbitration: she assented to Petitioners' request for an adjournment a mere five days before the hearing was scheduled to commence, and she afforded Petitioners an opportunity to reassert their counterclaims, even though she had no obligation to do so under the AAA Rules.[8] In short, the arbitrator's denial of Petitioners' request provides no basis for vacatur.

Third, Petitioners argue that the Award was "irrational" because it failed to address or misstated points of fact and law. This line of attack is unpersuasive. "An award is irrational only if there is no proof whatever to justify [it]." *Susan D. Settenbrino, P.C. v. Barroga-Hayes*, 933 N.Y.S.2d 409, 410 (2d Dep't 2011). Even crediting Petitioners' largely dubious allegations—that the arbitrator misallocated the burden of proof, that she "adopt[ed] Batson's arguments at face value, and without a question," and that evidence of fraud on Batson's part was overwhelming (Reply Decl. ¶¶ 20–37)—one cannot reasonably say that there was no proof whatsoever to justify the Award.

Finally, Petitioners say that the Award was not a "reasoned award" because it failed to state "more than a simple result." (Reply Decl. ¶ 83 (quoting *Carmody Bldg. Corp. v. Richter & Ratner Contracting Corp.*, 08-CV-9633 (SHS), 2013 WL 4437213, at *3 (S.D.N.Y. Aug. 19,

---

[7] AAA Rule 6(b) states the following: "Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. *After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent*" (emphasis added).

[8] *See id.*

2013)). The petition falls short on this ground, too. As a general matter, "[t]he arbitrator's rationale for an award need not be explained"; "a barely colorable justification for the outcome reached" suffices. *Carmody*, 2013 WL 4437213, at *3 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)) (internal quotation marks omitted). Parties are free, however, to "stipulate that the arbitrator provide a more detailed award." *Id.* Though what is required in a "reasoned award" does not appear to be settled under New York law, courts have interpreted it to mean that the arbitrator is obligated to present "something short of findings of fact and conclusions of law but more than a simple result." *Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 12-CV-6280 (LAK), 2013 WL 1245549, at *3 (S.D.N.Y. Mar. 26, 2013) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.,* 674 F.3d 469, 473 (5th Cir.2012)) (alterations and internal quotation marks omitted).

It is unclear whether the arbitrator here was required to issue a reasoned award,[9] but even if she were, the Award meets that standard. The Award sets out the arbitrator's key findings and, where necessary, the reasons for those findings. (Award at 2–3.) In particular, the Award explains in full its rejection of what was perhaps Petitioners' most important argument: that Batson was not entitled to recover because he had been terminated for cause.[10] And though the

---

[9] In an e-mail to Seidel on August 23, 2013 discussing scheduling and other logistics, Batson indicated his preference for a "reasoned opinion." (Reply Decl. Ex. 2.) It would appear that this preference was conveyed to the arbitrator in a jointly submitted "Management Conference Guide." (*Id.*) Batson, however, insists that the arbitrator was under no obligation to issue a reasoned award. He points to Rule 46(b) of the AAA Rules, which provides the following: "The arbitrator need not render a reasoned award unless the parties request such an award in writing *prior to the appointment of the arbitrator* or unless the arbitrator determines that a reasoned award is appropriate" (emphasis added). The arbitrator was appointed on August 12, nearly two weeks before Batson's e-mail to Seidel, and it does not appear that the arbitrator decided on the appropriateness of a reasoned award. Nonetheless, the Court's analysis proceeds on the assumption that a reasoned award was required.

[10] The Award explains that, because Petitioners had not demonstrated that they had terminated Batson for cause prior to December 5, 2012—which is when, under the terms of the Amendment,

Award is a brief three pages, that reflects the nature of the case. This was not a complex commercial dispute, but a factually and legally straightforward breach of contract matter. The Award, accordingly, does more than state a simple result; it charts the path to its result with clear and well-reasoned findings.

## III. Conclusion

For the foregoing reasons, Petitioners' application to vacate is DENIED. The arbitration award is hereby confirmed. *See* N.Y. CPLR § 7511(e) ("[U]pon the denial of a motion to vacate or modify, [a court] shall confirm the award."); *Cellu-Beep, Inc. v. Telecorp Commc'ns, Inc.*, 13-CV-7236 (NRB), 2014 WL 3585515, at *5 (S.D.N.Y. July 18, 2014).

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: January 23, 2015
New York, New York

J. PAUL OETKEN
United States District Judge

---

Petitioners' payment obligation "accelerate[d] and bec[a]me immediately and unconditionally due and payable"—their termination argument had no merit. (Award at 2 & n.1.)